E-FILED
Saturday, 25 December, 2021  11:23:22 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| Maria Lopez and Alexis Brown, individually and on behalf of all others similarly situated, | 2:21-cv-02317 |
| Plaintiffs, | |
| - against - | Class Action Complaint |
| Amazon.com, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiffs allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.      Amazon.com, Inc. ("Defendant") manufactures, labels, markets, and sells a video doorbell under the Ring brand ("Product").



2.      The Product's battery life is represented as between 6 and 12 months.

3.      However, this is a maximum duration, under minimal usage, in an ideal environment.

4.      Most customers will not get two months of normal usage from a full battery charge, by experiencing accelerated battery depletion ("ABD").

5.      "Normal usage" refers to 750-1,000 events which a fully charged battery can endure.

6.      An event refers to any activity, such as pushing a button, motion trigger, recording, live viewing, or speaking through the camera.

7.      Motion triggers include deliveries, people walking down the block, cars, and even wind which causes movement of leaves.

8.      Reports show that the average house may have up to 50 motion triggers a day, which means 1,500 events in one month.

9.      Each event drains the battery by sending recorded data to cloud storage via Wi-Fi.

10.      When the temperature decreases to c. 36 degrees Fahrenheit, the Product's ability to retain a charge will diminish.

11.      At 32 degrees Fahrenheit, the battery will not charge.

12.      Below this temperature, the battery may and often does fail.

13.      Customer service typically points dissatisfied users to other external causes for ABD, such as cold weather, distance from the router, and Wi-Fi signal strength.

14.      ABD occurs even when users have modified their settings to restrict motion triggers to no more than five events per day.

15.      While Defendant sells a solar charger to charge the battery, it is defectively designed with high failure rates.

16.      Moreover, the power source will not cause the battery to retain its charge any longer.

17.      Even when the Product is hardwired, ABD persists.

18.      ABD significantly reduces the functionality of the Product.

19.    When a battery must be recharged frequently, it is a chore which is avoided.

20.    During the several hours when the Product is unmounted from the wall to recharge the battery, a user's home is vulnerable to the exact condition they purchased the Product to avoid – not being able to see who is at or near their door.

21.    Even the removable batteries fail to solve this issue, for reasons including their additional cost and numerous repetitive setup steps.

22.    Lastly, the push button suffers from a design flaw where it will easily split, often occurring outside of the warranty period, and Defendant does not replace or repair the Product.

23.    Since the button is fundamental to the doorbell, this significantly impacts users.

24.    The Product contains other representations which are misleading.

25.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

26.    The value of the Product that Plaintiffs purchased was materially less than its value as represented by defendant.

27.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

28.    Had Plaintiffs and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

29.    The Product is sold for a price premium compared to other similar products, no less than between $60 and $300 per unit, based on make and model, with the solar charger costing $75, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

3

Jurisdiction and Venue

30.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

31.     The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

32.     Plaintiff Maria Lopez is a citizen of Illinois.

33.     Defendant Amazon.com, Inc., is a Delaware corporation with a principal place of business in Seattle, King County, Washington

34.     Defendant transacts business within this District through sale of the Product directly to residents from its website, the websites of third-parties such as Best Buy and QVC, at brick-and-mortar stores such as Best Buy, and from home shopping channels.

35.     Venue is in this District because Plaintiff Lopez resides in this District and the actions giving rise to the claims occurred within this District.

36.     Venue is in the Urbana Division in this District because a substantial part of the events or omissions giving rise to the claim occurred in Macon County, i.e., Plaintiff Lopez's purchase of the Product and her awareness of the issues described here.

Parties

37.     Plaintiff Maria Lopez is a citizen of Decatur, Macon County, Illinois.

38.     Plaintiff Alexis Brown is a citizen of Philadelphia, Philadelphia County, Pennsylvania.

39.     Defendant Amazon.com, Inc., is a Delaware corporation with a principal place of business in Seattle, Washington, King County.

40.     Defendant is an American e-commerce company which sells almost everything.

41.    In addition to its sale of everyday goods, Defendant acquired Ring several years ago.

42.    Reports show ordinary Americans trust Amazon more than established institutions and even government.

43.    Defendant is known for its customer-centric culture which puts the customer first.

44.    Plaintiffs were aware of this commitment to customer satisfaction when they bought the Product, because they knew if anything went wrong, Defendant would "make it right."

45.    These facts show a company with a significant amount of goodwill and equity when it comes to consumer purchasing.

46.    Plaintiff Lopez purchased the Product and the above-described accessories on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including QVC, QVC.com or the QVC channel between December 2020 and June 2021, among other times.

47.    Plaintiff Brown purchased the Product and the above-described accessories on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Amazon.com between 2019 and 2021, among other times.

48.    Plaintiffs bought the Product because they expected it maintained its charge for the length of time represented, and this duration would be arrived at from considering realistic usage, did not contain any defective parts, and the solar charger functioned as promised because that is what the representations said and implied.

49.    Plaintiffs relied on the words and images on the Product, on the labeling, statements, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product.

50.    Plaintiffs bought the Product at or exceeding the above-referenced price.

51.   Plaintiffs would not have purchased the Product if they knew the representations and omissions were false and misleading or would have paid less for it.

52.   Plaintiffs chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

53.   The Product was worth less than what Plaintiffs paid and they would not have paid as much absent Defendant's false and misleading statements and omissions.

54.   Plaintiffs intend to, seek to, and will purchase the Product again when they can do so with the assurance the Product's representations are consistent with its abilities and/or composition.

55.   Plaintiffs are unable to rely on the labeling and representations about the issues described here for not only this Product, but other similar products, because they are unsure of whether those representations are truthful.

### Class Allegations

56.   Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of an:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and a
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Pennsylvania, Michigan, Nevada, Rhode Island, North Dakota, Texas, New Hampshire, South Dakota, and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged.

57.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

58.   Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

59.    Plaintiffs are adequate representatives because their interests do not conflict with other members.

60.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

61.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

62.    Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

63.    Plaintiffs seek class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

64.    Plaintiffs incorporate by reference all preceding paragraphs.

65.    Plaintiffs and class members desired to purchase a product that maintained its charge for the length of time represented, and this duration would be arrived at from considering realistic usage, did not contain any defective parts, and the solar charger functioned as promised.

66.    Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

67.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

68.    Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

69.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

70.     Plaintiffs relied on the representations that the Product maintained its charge for the length of time represented, and this duration would be arrived at from considering realistic usage, did not contain any defective parts, and the solar charger functioned as promised

71.      Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

72.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the ICFA and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

73.     Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

74.     As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

75.     In addition, defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

76.     The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiffs and class members that it maintained its charge for the length of time represented, and this duration would be arrived at from considering realistic usage, did not

8

contain any defective parts, and the solar charger functioned as promised.

77.    Defendant directly marketed the Product to consumers through its advertisements and partnerships with retailers, through social media, and in print circulars.

78.    Defendant knew the product attributes that potential customers like Plaintiffs were seeking and developed its marketing to directly meet those needs and desires.

79.    Defendant's representations about the Product were conveyed in writing and promised it would be defect-free.

80.    Defendant's representations affirmed and promised that the Product maintained its charge for the length of time represented, and this duration would be arrived at from considering realistic usage, did not contain any defective parts, and the solar charger functioned as promised.

81.    Defendant described the Product as one which maintained its charge for the length of time represented, and this duration would be arrived at from considering realistic usage, did not contain any defective parts, and the solar charger functioned as promised, which became part of the basis of the bargain that the Product would conform to its affirmation and promise.

82.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

83.    This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high quality products.

84.    Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

85.    Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

86. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised and not fit for the purpose for which it was intended.

87. The Product was not merchantable because it was not adequately contained, packaged, and labeled as required by the representations, and did not conform to the promises and affirmations of fact made on the container, packaging, and label.

88. Defendant had reason to know that the purpose for which the Product was bought by Plaintiff and consumers was because they expected it maintained its charge for the length of time represented, and this duration would be arrived at from considering realistic usage, did not contain any defective parts, and the solar charger functioned as promised, and they relied on Defendant's skill or judgment to select or furnish such a suitable product.

89. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

90. Defendant had a duty to truthfully represent the Product, which it breached.

91. This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high quality products.

92. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

93. Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

94. Plaintiffs and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

## Fraud

95.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it maintained its charge for the length of time represented, and this duration would be arrived at from considering realistic usage, did not contain any defective parts, and the solar charger functioned as promised.

96.     Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and/or constructive knowledge of the falsity of the representations.

97.     Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

98.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

 **WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the

applicable laws;

4.  Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory

    claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and

    experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   December 26, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com